IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

| | |
|---|---|
| SCOTTSDALE INDEMNITY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>1ST CHOICE TITLE, LLC,<br><br>and<br><br>JOHNNY FIOR a/k/a J. FIOR LORENZO,<br><br>Defendants. | Case No. 2:21-cv-00036 |

## COMPLAINT FOR DECLARATORY JUDGMENT OR, IN THE ALTERNATIVE, RESCISSION

Pursuant to FED. R. CIV. P. 57 and 28 U.S.C. § 2201, Plaintiff Scottsdale Indemnity Company ("Scottsdale") respectfully submits this Complaint for Declaratory Judgment or in the Alternative Rescission against Defendants 1st Choice Title, LLC ("1st Choice") and Johnny Fior a/k/a J. Fior Lorenzo ("Fior" or, together with 1st Choice, "Defendants"), and states as follows:

1. This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202, and 1332 or, in the alternative, for rescission under Fla. Stat. § 627.409.

## PARTIES

2. Scottsdale is an insurance company organized and existing under the laws of the State of Ohio with its principal office located in Scottsdale, Arizona.

3. Upon information and belief, 1st Choice is a Florida limited liability company with its principal place of business in Lee County, Florida.

4. Upon information and belief, the members of 1st Choice are citizens of the State of Florida.

5. Upon information and belief, Fior is a citizen of the State of Florida and the former managing member and chief financial officer of 1st Choice.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over this action pursuant to 28 U.S. C. § 1332(a)(1). There is complete diversity of citizenship between Scottsdale and Defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) and (3) because a substantial part of the events giving rise to the claims occurred in this District and each Defendant is subject to the Court's personal jurisdiction.

## FACTUAL ALLEGATIONS

### The Application

8. On or about May 18, 2020, Fior signed a Renewal Application for Business and Management Indemnity Insurance (the "Application") on behalf of 1st Choice. A copy of the Application is attached hereto as "Exhibit 1."

9. Question 17 of the Application's Miscellaneous Professional Services Coverage Section Information inquired, and the Defendants responded, as follows:

> 17. Does any person to be insured have knowledge or information of any act, error or omission which might reasonably be expected to give rise to a claim against him or his predecessors in business. If yes, please provide details on a separate page. ☐ Yes ☒ No

10. The Application states, in relevant part:

> 1. The undersigned declares that to the best of his/her knowledge the statements herein are true. Signing of this Application does

       not bind the undersigned to complete the insurance, but it is agreed that this Application shall be the basis of the contract should a Policy be issued, and this application will be attached to and become a part of such Policy, if issued. The Insurer hereby is authorized to make any investigation or inquiry in connection with this Application as they may deem necessary.

2. It is represented that the particulars and statements contained in the Application for the proposed Policy and any materials submitted herewith (which shall be retained on file by Insurer and which shall be deemed attached hereto, as if physically attached hereto), are the basis for this proposed Policy and are to be considered as incorporated into and constituting a part of this proposed Policy.

*   *   *

4. It is agreed that in the event of any misstatement, omission, or untruth in this Application or any material submitted along with or contained herein, the Insurer has the right to exclude from coverage any claim based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving such misstatement, omission or untruth.

(Ex. 1 at 4.).

## The Policy

    11. In reliance upon the statements and representations contained in the Application, Scottsdale issued Business and Management Indemnity Policy number EKI3334589 (the "Policy") to 1st Choice effective for the period from June 21, 2020 to June 21, 2021 (the "Policy Period"). A copy of the Policy is attached hereto as "Exhibit 2."

    12. Subject to the Policy's terms, conditions, limitations, exclusions, and endorsements, the Policy provides coverage under a Miscellaneous Professional Services Coverage Section (the "MPS Coverage Section").

    13. Section A(1) of the Insuring Clause of the MPS Coverage Section states that Scottsdale shall pay on behalf of the "Insureds" "Loss" which the Insureds have become legally obligated to pay by reason of a "Claim" first made against any "Insureds" during the Policy

Period, or, if elected, the "Discovery Period," and reported to Scottsdale pursuant to Section E.1., for a "Wrongful Act" taking place on or after the "Retroactive Date" and prior to the end of the Policy Period. (Ex. 2 at MPS Coverage Section § A(1).)

14. Pursuant to the Policy's definition of "Insured," 1st Choice and Fior are Insureds under the Policy. (Ex. 2 at MPS Coverage Section § B(5); General Terms & Conditions § B(3); and Declarations, Item 1.)

15. "Claim" is defined in the MPS Coverage Section to mean, among other things, "a civil proceeding against any Insureds, commenced by the service of a complaint or similar pleading." (Ex. 2 at MPS Coverage Section § B(2)(b).)

16. The Policy defines "Loss" to mean "damages, judgments, settlements, pre-judgment or post-judgment interest awarded by a court, and Costs, Charges and Expenses incurred by any of the Insureds," subject to several exceptions. (Ex. 2 at MPS Coverage Section § 7, as amended by Endorsement No. 3.)

17. "Wrongful Act" is defined in the MPS Coverage Section to mean "any actual or alleged error, omission, misleading statement, misstatement, neglect, libel, slander or other defamatory or disparaging material, breach of duty or act allegedly committed or attempted by the Insureds, which occurs solely in connection with the Insureds rendering of, or actual or alleged failure to render, Professional Services." (Ex. 2 at MPS Coverage Section § B(11).)

18. "Professional Services" is defined to mean "solely in the performance of providing professional services as a title agent, escrow agent, title abstracter, title searcher, settlement agreement and closing agent including remote notary services for others for a fee." (Ex. 2 at MPS Coverage Section § B(9), as amended by Endorsement No. 4.)

19. Section C of the MPS Coverage Section, as amended by Endorsement No. 7, states, in relevant part, that Scottsdale shall not be liable for Loss under the MPS Coverage Section on account of any Claim "alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any willful or intentional failure on the part of any Insured to comply with escrow instructions" (the "Escrow Instructions Exclusion"). (Ex. 2 at MPS Coverage Section § C, as amended by Endorsement No. 7.)

20. Section C(14) of the MPS Coverage Section states that Scottsdale shall not be liable for Loss under the MPS Coverage Section on account of any Claim "alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving the insolvency or bankruptcy of any of the Insureds including, but not limited to, the failure, inability, or unwillingness to pay Claims, losses, or benefits due to such insolvency or bankruptcy" (the "Insolvency Exclusion"). (Ex. 2 at MPS Coverage Section § C(14).).

21. Section C(18) of the MPS Coverage Section states that Scottsdale shall not be liable for Loss under the MPS Coverage Section on account of any Claim "alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving any actual or alleged commingling of funds (the "Commingling Exclusion"). (Ex. 2 at MPS Coverage Section § C(18).)

22. Section D. of the Policy's General Terms and Conditions states, in relevant part:

By acceptance of this Policy, the Insureds agree that:

1. the statements in the Application are their representations, that such representations shall be deemed material to the acceptance of the risk or the hazard assumed by Insurer under this Policy, and that this Policy and each Coverage Section are issued in reliance upon the truth of such representations; and

2. in the event the Application, including materials submitted or required to be submitted therewith, contains any misrepresentation or omission

made with the intent to deceive, or contains any misrepresentation or omission which materially affects either the acceptance of the risk or the hazard assumed by Insurer under this Policy, this Policy, including each and all Coverage Sections, shall not afford coverage to the following Insureds for any Claim alleging, based upon, arising out of, attributable to, directly or indirectly resulting from, in consequence of, or in any way involving, any untruthful or inaccurate statements, representations or information:

a. any Insured who is a natural person and who knew the facts misrepresented or the omissions, whether or not such individual knew of the Application, such materials, or this Policy;

b. any Company to the extent it indemnifies any Insured referred to in subsection a. above;

c. any Company or any other entity that is an Insured, if any past or present chief executive officer, chief financial officer, general counsel or risk manager of the Parent Company knew the facts misrepresented or the omissions, whether or not such individual knew of the Application, such materials, or this Policy.

(the "Representations Exclusion"). (Ex. 2 at General Terms and Conditions § D.)

### The Underlying Action

23. On or about August 10, 2020, Connecticut Attorneys Title Insurance Company ("CATIC") filed a lawsuit against 1st Choice, Fior, and Fior Financial Services, LLC, Case No. 2020-CA-005224, in the Circuit Court of the 20th Judicial Circuit for Lee County, Florida (the "Underlying Action"). A copy of the Verified Complaint for Injunctive Relief and Damages filed in the Underlying Action (the "Underlying Complaint") is attached hereto as "Exhibit 3."

24. According to the Underlying Complaint, 1st Choice entered into an Agency Agreement with CATIC (the "Agreement") pursuant to which 1st Choice acted as a title, escrow, and closing agency on behalf of CATIC. (Ex. 3.)

25. Under the Agreement, 1st Choice was to deposit and maintain proceeds from real estate closing and refinancing transactions until such funds were disbursed to the authorized recipients. (Ex. 3.)

26. According to the Underlying Complaint, in violation of the Agreement, Fior made unauthorized withdrawals in excess of $500,000 from 1st Choice's bank account(s) and transferred such funds to Fior's personal accounts, and altered checks to make it appear as though payments were made to lenders in satisfaction of mortgages when such payments were not actually made. (Ex. 3.)

27. CATIC alleges causes of action for breach of the Agreement and seeks damages and injunctive relief, including an order: (1) enjoining Defendants from concealing, destroying, and altering any documents relating to their bank accounts and/or title insurance/real estate business; (2) enjoining 1st Choice from issuing title insurance forms belonging to CATIC, underwritten or to be underwritten by CATIC, or purporting to be issued by CATIC; (3) freezing all bank accounts owned and/or controlled by Defendants; and (4) directing 1st Choice and Fior to return to CATIC all policy forms and equipment belonging to CATIC. (Ex. 3.)

28. On or about August 18, 2020, the court in the Underlying Action issued a temporary injunction freezing all bank accounts owned and/or controlled by Defendants.

29. On or about October 5, 2020, Beverly and Dennis Duffala moved to intervene in the Underlying Action arguing that they were entitled to sale proceeds in a 1st Choice bank account that was frozen by the injunction.

30. On or about October 5, 2020, the court in the Underlying Action granted the Duffalas' motion to intervene and directed the Duffalas to file a motion to determine priority as to monies held in 1st Choice's bank account as it relates to the Duffalas' claim of priority

entitlement to sale escrow proceeds that they allege are currently held in said account versus general creditors of 1st Choice.

31. On or about October 12, 2020, the Duffalas filed a motion to determine priority as directed by the court.

32. On or about October 15, 2020, Able World Trading LLC ("ABT") moved to intervene in the Underlying Action alleging that, from September 2018 through January 2020, ABT transferred $470,000 to 1st Choice to be used for home equity loans but that such funds were used for other purposes.

33. On or about October 15, 2020, 1st Choice filed a Schedule of Creditors in the Underlying Action, which indicates that the amounts allegedly owed to 1st Choice's creditors exceed the amount contained in 1st Choice's frozen bank account(s).

34. On or about November 3, 2020, the court in the Underlying Action granted ABT's motion to intervene in the Undelrying Action and directed ABT to file a motion for the Court to determine priority with respect to ABT's claims and any additional pleadings or complaints against the parties in the Underlying Action.

35. On or about November 18, 2020, CATIC filed a Proposed Distribution Plan in the Underlying Action, which indicates that the amounts allegedly owed to 1st Choice's creditors exceed the amount contained in 1st Choice's frozen bank account(s).

36. On or about December 2, 2020, ABT filed an Intervenor's Complaint in the Undelrying Action against 1st Choice and Fior.

37. In the Intervenor Complaint, ABT generally alleged that, from September 2018 through January 2020, ABT transferred $470,000 to 1st Choice escrow accounts in connection with certain real estate closing transactions but that such funds were used for other purposes.

**Scottsdale's Coverage Position**

38.   After the Underlying Action was tendered to Scottsdale for coverage under the Policy, on October 30, 2020, Scottsdale sent a letter to 1st Choice and Fior in which it agreed to defend 1st Choice and Fior in the Underlying Action subject to a complete reservation of its rights under the Policy and at law. A copy of the October 30, 2020 letter is attached hereto as "Exhibit 4."

39.   On January 12, 2021, Scottsdale sent a letter to 1st Choice and Fior in which it supplemented its analysis of coverage for the Underlying Action under the Policy and expressly reserved its right to seek reimbursement from Defendants of all defense costs that Scottsdale pays on their behalf under the Policy in connection with the defense of the Underlying Action. A copy of the January 12, 2021 letter is attached hereto as "Exhibit 5."

40.   Scottsdale appointed counsel to defend 1st Choice in the Underlying Action pursuant to its right and duty to do so under the Policy.

41.   To date, Fior has not responded to Scottsdale's numerous emails, phone calls, October 30, 2020 letter, or January 12, 2021 letter and, thus, Scottsdale has been unable to coordinate Fior's defense in the Underlying Action.

**COUNT I – DECLARATORY JUDGMENT AS TO APPLICATION OF ESCROW INSTRUCTIONS EXCLUSION**

42.   Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

43.   An actual, present, and justiciable controversy exists concerning whether the Escrow Instructions Exclusion bars coverage for all and/or a portion of the Underlying Action.

44.   Scottsdale requests that the Court declare that, pursuant to the application of the Escrow Instructions Exclusion, the Policy affords no coverage for all and/or a portion of the

9

Underlying Action and, as such, Scottsdale is not obligated to defend or indemnify Defendants in connection with the Underlying Action.

### COUNT II – DECLARATORY JUDGMENT AS TO APPLICATION OF INSOLVENCY EXCLUSION

45. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

46. An actual, present, and justiciable controversy exists concerning whether the Insolvency Exclusion bars coverage for all and/or a portion of the Underlying Action.

47. Scottsdale requests that the Court declare that, pursuant to the application of the Insolvency Exclusion, the Policy affords no coverage for all and/or a portion of the Underlying Action and, as such, Scottsdale is not obligated to defend or indemnify Defendants in connection with the Underlying Action.

### COUNT III – DECLARATORY JUDGMENT AS TO WRONGFUL ACT

48. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

49. An actual, present, and justiciable controversy exists concerning whether the Underlying Action alleges a Wrongful Act necessary to bring the Underlying Action within the scope of coverage of the Policy.

50. Scottsdale requests that the Court declare that the Underlying Action does not allege a Wrongful Act and, as a result, the Policy affords no coverage for all and/or a portion of the Underlying Action and, as such, Scottsdale is not obligated to defend or indemnify Defendants in connection with the Underlying Action.

## **COUNT IV – DECLARATORY JUDGMENT AS TO COMMINGLING EXCLUSION**

51. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

52. An actual, present, and justiciable controversy exists concerning whether the Commingling Exclusion bars coverage for all and/or a portion of the Underlying Action.

53. Scottsdale requests that the Court declare that, pursuant to the application of the Commingling Exclusion, the Policy affords no coverage for all and/or a portion of the Underlying Action and, as such, Scottsdale is not obligated to defend or indemnify Defendants in connection with the Underlying Action.

## **COUNT V – DECLARATORY JUDGMENT AS TO REPRESENTATIONS EXCLUSION**

54. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

55. An actual, present, and justiciable controversy exists concerning whether the Representations Exclusion bars coverage for all and/or a portion of the Underlying Action.

56. Scottsdale requests that the Court declare that, pursuant to the application of the Representations Exclusion, the Policy affords no coverage for all and/or a portion of the Underlying Action and, as such, Scottsdale is not obligated to defend or indemnify Defendants in connection with the Underlying Action.

## **COUNT VI – RESCISSION (FLA. STAT. § 627.409)**

57. Scottsdale hereby adopts by reference the allegations contained in paragraphs 1 through 41 of this Complaint as if fully set forth herein.

58. Scottsdale pleads this count in the alternative.

59. Defendants made misrepresentations, omissions, concealments, and/or incorrect statements to Scottsdale in the Application, including but not limited to falsely stating that they did not have knowledge or information of any act, error or omission which might reasonably be expected to give rise to a claim against an Insured.

60. The misrepresentations, omissions, concealments, and/or incorrect statements by Defendants in the Application were material to the acceptance of the risk or the hazard assumed by Scottsdale under the Policy.

61. Scottsdale, acting in good faith, would not have issued the Policy, would not have issued the Policy at the same premium rate, would not have issued the Policy in as large an amount, and/or would not have provided coverage with respect to the hazard resulting in the loss had the true facts been disclosed as required by the Application or otherwise.

62. Scottsdale seeks a judicial determination rescinding the Policy as a result of Defendants' misrepresentations, omissions, concealments, and/or incorrect statements in the Application and an order directing Defendants to return to Scottsdale any and all amounts that Scottsdale has paid on behalf of any Insured under the Policy.

63. Scottsdale stands ready and willing to tender a refund of the premium paid for the Policy and agrees to tender a refund of any associated interest. As such, Scottsdale has restored or will restore the status quo existing between Scottsdale and Defendants before the material misrepresentations and omissions were made by Defendants.

64. Scottsdale only recently learned of the material misrepresentations and brought suit seeking to void the Policy promptly.

**PRAYER FOR RELIEF**

WHEREFORE, Scottsdale prays that this Court enter an Order:

1. declaring that, pursuant to application of the Escrow Instructions Exclusion as stated in Count I, the Policy affords no coverage for all and/or a portion of the Underlying Action and, as such, Scottsdale is not obligated to defend or indemnify Defendants in connection with the Underlying Action;

2. declaring that, pursuant to the application of the Insolvency Exclusion as stated in Count II, the Policy affords no coverage for all and/or a portion of the Underlying Action and, as such, Scottsdale is not obligated to defend or indemnify Defendants in connection with the Underlying Action;

3. declaring that the Underlying Action does not allege a Wrongful Act as stated in Count III and, as a result, the Policy affords no coverage for all and/or a portion of the Underlying Action and, as such, Scottsdale is not obligated to defend or indemnify Defendants in connection with the Underlying Action;

4. declaring that, pursuant to the application of the Commingling Exclusion as stated in Count IV, the Policy affords no coverage for all and/or a portion of the Underlying Action and, as such, Scottsdale is not obligated to defend or indemnify Defendants in connection with the Underlying Action;

5. declaring that, pursuant to the application of the Representations Exclusion as stated in Count V, the Policy affords no coverage for all and/or a portion of the Underlying Action and, as such, Scottsdale is not obligated to defend or indemnify Defendants in connection with the Underlying Action;

6. awarding Scottsdale any and all amounts that Scottsdale has paid on behalf of any Insured under the Policy;

7. in the alternative, declaring that the Policy is rescinded and void as stated in Count VI and, upon the return of the Policy premium and interest to 1st Choice, directing 1st Choice and Fior to return to Scottsdale any and all amounts that Scottsdale has paid on behalf of any Insured under the Policy;

8. awarding Scottsdale its costs, expenses, and attorneys' fees; and

9. awarding Scottsdale all other relief that the Court deems just and equitable.

Respectfully submitted this 13th day of January, 2021,

**LYDECKER | DIAZ**
*Attorneys for Plaintiff Scottsdale Indemnity Company*
1221 Brickell Avenue
19th Floor
Miami, Florida  33131
(305) 416-3180 – Phone
(305) 416-3190 -  Fax

*/s/Stephen Hunter Johnson*
STEPHEN HUNTER JOHNSON
Florida Bar No.:  12362
shj@lydeckerdiaz.com